Mireles *v.* Mireles, Appellant.

Argued April 13, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Harold Kaminsky,* for appellant.

*James R. Graham,* with him *Graham & Graham,* for appellee.

OPINION BY WOODSIDE, J., July 21, 1955:

This is a divorce case in which the court upon recommendation of the master signed a decree granting the husband a divorce on the ground of indignities.

Our independent examination of the record convinces us that the decree should be affirmed.

The parties were married in 1942. They have two children. The husband was born and reared in Mexico. The wife is a native of Pennsylvania.

As in most cases of this kind, the testimony is conflicting and credibility of witnesses, particularly that of the parties becomes important. The master, who had the opportunity to see and hear the witnesses, was much more favorably impressed with the truthfulness of the plaintiff than of the defendant.

The plaintiff testified that the defendant neglected to care for the children, her husband and the home; that she constantly criticized, insulted and humiliated him; and that she falsely accused him of infidelity.

The house in which they lived must have been not only unkempt and cluttered but filthy as well. So bad was it that the Board of Health sent her a notice to clean it. When she refused officials were sent to the house to clean it. So badly did the defendant behave at that time that they threatened to arrest her.

The children too were neglected, according to the plaintiff's testimony. Frequently no meals were prepared by the defendant for the plaintiff, and the family wash was not done by her. She attempted to excuse all this on the ground that she was not feeling well, an explanation which hardly accounts for such neglect.

The defendant frequently swore at and ridiculed her husband referring disparagingly to his nationality and illiteracy. She frequently urged him to leave the house, and when he did she accused him of running around with other women.

While the defendant was testifying on direct examination she was asked, "Q. Now, your husband also said that the little baby, Stephanie, was dirty and she wasn't properly taken care of. Will you tell us about that?"

Her unresponsive answer vividly portrays her attitude toward her husband; it was: "A. Yes, she wore a dirty coat, but I was allergic to him, I wanted him to get away from the house, I was always so dizzy and I couldn't stand him around. He would always keep nagging at me and he would never help me do anything."

The plaintiff probably was not an ideal husband, but a careful examination of the evidence along with the report of the master in which he reviews the testimony and explains what he believed and why, convinces us that the divorce should be granted.

Decree affirmed.